IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDY CHARLES GRABIAK,                )
                                      )
    Plaintiff,                        )
                                      )
  -vs-                                )    Civil Action No. 17-1645
                                      )
NANCY A. BERRYHILL,                   )
ACTING COMMISONER OF SOCIAL           )
SECURITY,                             )
                                      )
    Defendant.                        )

AMBROSE, Senior District Judge.

## OPINION AND ORDER

### Synopsis

Plaintiff Randy Charles Grabiak ("Grabiak") seeks judicial review of the Social Security Administration's denial of his claims for disability insurance benefits ("DIB").[1] Grabiak alleges a disability onset date of November 14, 2013. (R. 17) The ALJ denied his claim following a hearing at which both Grabiak and a vocational expert ("VE") appeared and testified. Grabiak then appealed. Before the Court are the parties' cross-motions for summary judgment. *See* ECF Docket Nos. 14 and 18. For the reasons set forth below, Grabiak's Motion for Summary Judgment is denied and the ALJ's decision is affirmed.

### Opinion

1. Standard of Review

---

[1] The ALJ determined that Grabiak met the insured status requirements of the Social Security Act through December 31, 2019. (R. 17)

1

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)6 and 1383(c)(3)(7). Section 405(g) permits a district court to review the transcripts and records upon which a determination of the Commissioner is based, and the court will review the record as a whole. See 5 U.S.C. § 706. When reviewing a decision, the district court's role is limited to determining whether the record contains substantial evidence to support an ALJ's findings of fact. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979); *Richardson*, 402 U.S. at 390, 91 S. Ct. 1420.

Importantly, a district court cannot conduct a *de novo* review of the Commissioner's decision, or re-weigh the evidence of record; the court can only judge the propriety of the decision with reference to the grounds invoked by the Commissioner when the decision was rendered. *Palmer v. Apfel*, 995 F.Supp. 549, 552 (E.D. Pa.

1998); *S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196-7, 67 S.Ct. 1575, 91 L.Ed. 1995 (1947). Otherwise stated, "I may not weigh the evidence or substitute my own conclusion for that of the ALJ. I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently." *Brunson v. Astrue*, 2011 WL 2036692, 2011 U.S. Dist. LEXIS 55457 (E.D. Pa. Apr. 14, 2011) (citations omitted).

## II. The ALJ's Decision

As stated above, the ALJ denied Grabiak's claim for benefits. More specifically, at step one of the five step analysis, the ALJ found that Grabiak had not engaged in substantial gainful activity since the application date. (R. 17) At step two, the ALJ concluded that Grabiak suffers from the following severe impairments: neurocognitive disorder; major depressive disorder; ADHD; generalized anxiety disorder; degenerative dementia; and white matter disease. (R. 17-18)[2] At step three, the ALJ concluded that Grabiak does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-20) Between steps three and four, the ALJ found that Grabiak has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels with certain nonexertional limitations. (R. 20-37) At step four, the ALJ found that Grabiak is unable to perform his past relevant work. (R. 37) Ultimately, at the fifth step of the analysis, the ALJ concluded that, considering Grabiak's age, education, work

---

[2] The ALJ concluded that other complaints did not rise to the level of severe impairments. (R. 18)

3

experience, and RFC, there are jobs that exist in significant numbers in the national economy that he can perform, such as a laundry worker, a marker, and a presser. (R. 37-38)

III. Discussion

(a) Medical Opinions

Grabiak finds fault with the weight the ALJ chose to give to various medical opinions. The amount of weight accorded to medical opinions is well-established. Generally, the opinions of a claimant's treating physicians are entitled to substantial and, at times, even controlling weight. 20 C.F.R. § 416.927(c).[3] To be entitled to controlling weight, however, the treating physician's opinion must be well supported by medical techniques and consistent with the other substantial evidence of record. *See Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). To determine the weight of a treating physician's opinion, the ALJ may consider a number of factors, including consistency, length of treatment, corroborating evidence, and supportability. 20 C.F.R. § 426.927. As the Court of Appeals for the Third Circuit has explained:

> "A cardinal principle guiding disability determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on continuing observation of the patient's condition over a prolonged period of time.'" *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). However, "where … the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit" and may reject the treating physician's assessment if such rejection is based on contradictory medical evidence. *Id.* Similarly, under 20 C.F.R. § 416.927[(c)](2), the opinion of a treating physician is to be given controlling weight only when it is well-supported by medical evidence and is consistent with other evidence in the record.

---

[3] Although the regulations governing the evaluation of medical evidence have been amended, the version effective March 27, 2017, does not apply to the present claim. *See* 20 C.F.R. § 416.927 (2017); 20 C.F.R. § 920c (2017).

4

*Becker v. Comm'r. of Soc. Sec. Admin.*, 403 Fed. Appx. 679, 686 (3d Cir. 2010). Although the ALJ may choose who to credit when faced with a conflict, he "cannot reject evidence for no reason or for the wrong reason." *Diaz v. Comm'r. of Soc. Sec.*, 577 F.3d 500, 505 (3d Cir. 2009).

According to Grabiak, the ALJ erred with respect to the weight she gave to portions of opinions proffered by Dr. Randall Orr, Dr. Paul Nussbaum, and Dr. Liv E. Miller. He contends that each physician's opinion supports a finding of disability and that the ALJ failed to sufficiently explain her rejection of these findings. I disagree. An ALJ is not required to accept a treating provider's opinion uncritically. Rather, the ALJ must weigh all of the record evidence as set forth above. Orr opined that Grabiak would "be able to perform basic repetitive tasks with minimal independent decision making and minimal interaction with others (due to distractibility)." (R. 394)[4] This is perfectly in line with the ALJ's conclusion that Grabiak could perform "unskilled work with minimal interaction." (R. 26) Orr's observations that Grabiak is "unable to sustain his concentration for more than brief periods, is unable to recall important information, is unable to follow conversations - especially when they become more complex / detailed, and is unable to follow written instructions of any depth or complexity," (R. 394) is also accounted for in the RFC. The ALJ limited Grabiak to performing simple, routine, and

---

[4] Grabiak does not reference Orr's November 4, 2016 letter in which Orr opined that "Mr. Grabiak's cognitive deficits prevent him from working. On that basis, he should be awarded disability." (R. 469-70) Nonetheless, I find that the ALJ's decision to give this letter only "partial weight" is supported by substantial evidence of record. As the ALJ noted, this letter declaring Grabiak incapable of working is at odds with his previous representation that Grabiak "could work doing a simple job with repetitive tasks and minimal interaction." (R. 26) Further, Orr's conclusion is inconsistent with Grabiak's demonstrated average to low intelligence which does not support a finding of complete inability to work. (R. 26) Finally, Orr's comments regarding Grabiak's inability to work are unpersuasive as this issue is reserved for the Commissioner. *See Gore v. Colvin*, Civ. No. 13-2151, 2014 WL 4796482, at * 7 (M.D. Pa. Sept. 26, 2014) and 20 C.F.R. 404.1527(d).

repetitive tasks but not at a production rate and to simple work-related decisions. (R. 20) Consequently, I reject Grabiak's challenge to the weight the ALJ accorded Orr's opinion.

Nor am I persuaded by Grabiak's contention that the ALJ erroneously failed to account for Nussbaum's conclusion that he "will likely need additional time to complete tasks and have information repeated to him and written down for him." (R.257); *see* ECF Docket No. 15, p. 7. The ALJ gave great weight to Nussbaum's opinion. The RFC incorporates Nussbaum's limitations "because the evaluation reflects a restriction to simple, routine, and repetitive tasks and very limited social interaction." (R. 32) The ALJ also imposed a restriction against a production rate pace. I find that, in light of the restriction to simple, routine, repetitive work, this adequately accounts for any additional time that Grabiak may need to complete tasks. Further, the ALJ's conclusion that "Nussbaum's overall description of capabilities does not support a finding that the claimant could not do any work," (R. 32) is supported by substantial evidence of record. For instance, Nussbaum described Grabiak's neurocognitive impairment as only "mild-to-moderate" in nature. (R. 404) His full-scale IQ score of 96 placed him within the "average" range relative to same-age peers as did his verbal IQ score of 104. (R. 30) Grabiak is also independent in his activities of daily living. He drives, takes his medications independently, and manages his finances together with his wife. (R. 29) Simply stated, I see no basis for remand with respect to the ALJ's assessment of Dr. Nussbaum's opinion.

Dr. Miller reviewed Grabiak's prior evaluations and assessed him in September of 2016. The ALJ gave a detailed review of Miller's findings. (R. 32-36) She gave great weight to that portion of Miller's opinion which indicated that Grabiak could not return to

6

his prior work. (R. 36) She gave "partial weight" to the opinion as a whole. (R. 36) Grabiak faults the ALJ for failing to "explain why she found Dr. Miller's opinion only partially credible," or for failing to "identify reasons for excluding specific portions, most notably that full-time employment would potentially be emotionally overwhelming." *See* ECF Docket No. 15, p. 8-9. Reading the ALJ's opinion as a whole, I find that the ALJ adequately explained her reasons for giving only "partial weight" to the opinion. For instance, although Miller opined that "the claimant's level of anxiety would likely impact his occupational functioning, potentially making full-time employment emotionally overwhelming," Miller *also* opined that "employment in a less demanding work milieu or part-time employment may be considered as his psychiatric status improves." (R. 36, *citing*, R. 468) Additionally, Miller noted that, "[d]espite his reported memory difficulties, [Grabiak] was a good historian with intact ability to describe his cognitive and functional difficulties in detail." (R. 34) Further, Miller herself questioned the results of her testing, noting that the test results were "likely an under-estimation of [Grabiak's] optimal cognitive functioning." (R. 34)[5] In fact, Grabiak reported "significant difficulty with language" yet displayed "average comprehension, reading, writing, naming, and abstract reasoning, concept formation, visual problem solving, and memory consolidation, all of which would be expected to be impacted in the case of a possible degenerative neurocognitive disorder." (R. 36) Grabiak's ability to watch YouTube

---

[5] The ALJ noted other irregularities, stating that "Dr. Miller noted that relative to the claimant's previous evaluation with Dr. Nussbaum, many of the scores in the current report appeared to be slightly lower than what was obtained on that evaluation (11F, p. 6). Dr. Miller stated that with the suggested variability in task engagement, it was difficult to determine the true nature of this decline (11F, pp. 6-7). Dr. Miller indicated that some scores, like the claimant's non-verbal reasoning, improved, which would be unusual in a degenerative process. However, Dr. Miller opined that the claimant continues to have many intact skills within executive functioning, memory consolidation, and behavioral regulation with reported preserved ability to operate a motor vehicle and possible conduct DJ activities that would makes [sic] a diagnosis of such a condition unlikely in the absence of significant findings of frontal or temporal degeneration on neuroimaging (11F, p. 7)." (R. 35)

7

videos on a regular basis "is also somewhat inconsistent with expectations given his reported memory decline" as his ability to continue to operate a motor vehicle. (R. 36) In short, substantial evidence supports the ALJ's assessment of Miller's opinion and there is no basis for remand.

    (b) Work History

Grabiak also asserts that the ALJ erred in her credibility assessment, in part because it failed to acknowledge his strong work history. An ALJ's credibility finding is entitled to deference because the ALJ has had the opportunity to observe the claimant. *Crandall v. Astrue*, No. 10-1431, 2011 U.S. Dist. LEXIS 116826, at * 25-28 (E.D. Pa. Mar. 31, 2011). "'The final determination of credibility rests with the Administrative Law Judge as long as he considers all relevant factors and sufficiently explains his resolutions.' … 'the ALJ's credibility determinations should not be reversed unless inherently incredible or patently unreasonable.'" *St. George Warehouse, Inc. v. NLRB*, 420 F.3d 294, 298 (3d Cir. 2005) (citations omitted). As regards work history, it is certainly probative, but such history alone is not dispositive of credibility. *Thompson v. Astrue*, Civ. No. 09-519, 2010 WL 3661530, at * 4, 2010 U.S. Dist. LEXIS 98112, at * 11 (W.D. Pa. Sept. 20, 2010) (stating that "[a]n exemplary work history in and of itself is insufficient to overcome the substantial evidence supporting the ALJ's credibility determination."). Here, the ALJ clearly was aware of, and discussed, Grabiak's past work history. (R. 26, identifying Grabiak's former position as a Product Director for Highmark; R. 28, noting that Grabiak had run an ambulatory surgery program from 1989 to 1993 or 1994 and was promoted to the Office of Medical Affairs and that he worked at Highmark for 13 years) It is apparent that she considered the entire record. She found Grabiak's statements

8

concerning the intensity, persistence and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence of record, all of which she thoroughly considered. In this case, therefore, remand is not warranted for failure to place her acknowledgement of Grabiak's work history specifically in the context of a credibility analysis. See *Loneker v. Comm'r. of Soc. Sec.*, Civ. No. 17-2006, 2018 WL 5784996, at * 4 (D. N.J. Nov. 5, 2018).

An appropriate order shall follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

RANDY CHARLES GRABIAK )
    Plaintiff, )
 )
  -vs- )     Civil Action No. 17-1645
 )
NANCY A. BERRYHILL, )
ACTING COMMISSIONER OF SOCIAL )
SECURITY, )
 )
    Defendant. )

AMBROSE, Senior District Judge.

## **ORDER OF COURT**

Therefore, this 21st day of March, 2019, it is hereby ORDERED that the Plaintiff's Motion for Summary Judgment (Docket No. 14) is DENIED and that the Defendant's Motion for Summary Judgment (Docket No.18) is GRANTED. It is further ORDERED that this case be marked "Closed" forthwith.

                                BY THE COURT:

                                /s/ Donetta W. Ambrose
                                Donetta W. Ambrose
                                United States Senior District Judge